**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA**
South Bend

| | |
|---|---|
| **UNITED STATES DISTRICT COURT EX REL. RAJ K. PATEL V. THE UNIVERSITY OF NOTRE DAME AND ITS RESPONDENTS SUPERIORS** | |
| RAJ K. PATEL, from all capacities, *Relator-Petitioner* | No. 3:26-cv-636-CCB-SJF<br>Dated: November 13, 2026 |
| v. | |
| THE UNIVERSITY OF NOTRE DAME dU LAC and ITS RESPONDENT SUPERIORS, *Respondents* | -FILED- NOV 16 2026 At ____ M Chanda J. Berta, Clerk U.S. DISTRICT COURT NORTHERN DISTRICT OF INDIANA |

# RAJ K. PATEL'S MOTION TO TAX FEES, COSTS, AND JUST DAMAGES UNDER INHERENT EQUITABLE JURISDICTION

**COMES NOW** Relator-Petitioner Raj K. Patel, do hereby submit this permissive and timely[1] motion for restitution in fees, costs, and just

---

1. Collection may happen "years after" case is over. *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 395 (1990). *Thompson v. United States*, 103 U.S. 480, 484 (1880) (inactivity in the court does not expire abatement right) (cited in *Fleming v. Goodwin*, 165 F.2d 334, 337-8 (8th Cir. 1948)); *Fourqurean v. NCAA*, No. 25-1187 * 28-9 (7th Cir. Jul. 16, 2025) (Ripple, J., dissenting) (internal citations omitted) (citing Appellant was not "delayed in bringing this action"); *cf.* 28 C.F.R. § 24.101; & *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (8 months' time delay in bringing extraordinary writ for preliminary injunction is

damages jointly against both the University of Notre Dame and the parent corporation, the Congregation of the Holy Cross[2] for acts and omission in "bad faith" and "bad tendency"[3] towards Patel without filing a special or general appearance, and further for both Respondents obscuring "good faith." Fed. R. Civ. P. 11 (good faith not a permissive argument). *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (The "party who brings a suit is ***master to decide what law he will rely upon***, and...does determine whether he will bring a 'suit arising under'

---

not an "unreasonable" delay because court will be "ascertaining" "damages...by their very nature are irreparable...precise economic consequences" are "virtually impossible" to measure). 28 C.F.R. §§ 36.103 & 36.105(a)(1)(iii).

2. The Congregation of the Holy Cross, United States Province has its principal place of business within this district at 54515 State Road 933 North, Notre Dame, IN 46556 and the President and Director is William M. Lies, CSC, according to foreign filings in the State of Florida's Secretary of State Office (FEI/EIN # 32-0344245) (Document # F11000003773) it is registered as a foreign not for profit organization. The Congregation of the Holy Cross-Eastern Province, Inc. has its principal place of business within this district at 54515 State Road 933 North, Notre Dame, IN 46556 and the President and Director is William M. Lies, CSC, according to foreign filings in the State of Florida's Secretary of State Office (FEI/EIN # 06-0860163) (Document # P33291) it is registered as a foreign not for profit organization.

The University of Notre Dame du Lac was charted by a legislative act of the General Assembly on January 15, 1844 forming it as "body corporate and politic" and remains headquarted with its primary place of business in this state of Indiana and federal district and under the ownership of The Congregation of the Holy Cross. **Ex. M-1.**

3. *See Infra. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (also discussing the casting of "prior restraint" may be a violation of the 1st & 5th Amendment). *See generally Abrams v. United States*, 250 U.S. 616, 624 (1919) (applying "bad tendency" or "intended" acts and omission; "But it is not necessary to a decision of this case to consider whether such distinction is vital or merely formal, for the language of these circulars was obviously intended to provoke and to encourage resistance to the United States in the war."). *Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n*, 475 U.S. 1, 16 (1986) ("choice to speak includes within it the choice of what not to say").

the...[Constitution or laws] of the United States by his declaration or bill.") (italics added). Playing in Commerce is "intercourse." *Gibbons v. Ogden*, 22 U.S. 1, 189-90 (1824). *Carter v. Carter Coal Co.*, 298 U.S. 238, 297-8 (1936) (commerce in international trade of human capital). Congress has also enacted several other statutes since the Civil War that shows a federal policy on ensuring that all discrimination from the contracting world is removed by substantial justice, such as 42 U.S.C. §§ 1981 & 1982, *accord*, *Runyon v. McCrary*, 427 U.S. 160, 165, & 168-75 (1976) ("private" universities and schools have "limitations upon" their "discrimination"; "its enforcement in the context of...any right of free association or of privacy of the defendants, of the intervenor, or of their pupils or patrons.") *and Id.* at 172 (illustrates "a classic violation of § 1981"). Plaintiff Patel is proper in approaching this court "with our without subject matter jurisdiction for costs under inherent court authority," in equity, which is not subject to supervisory control from higher courts. *Nw. Fuel Co. v. Brock*, 139 U.S. 216, 217-8 (1891), *accord, Willy v. Coastal Corp.*, 503 U.S. 131, 137-9 (1992). It is unequivocally Respondents misconducts in each of the four (4) cases here that has caused this undue delay in asserting federal question jurisdiction. *Pearle*

*Vision, Inc. v. Romm*, 541 F.3d 751 (7th Cir. 2008) (court orders $649,521.99 in sanctions; deliberately withholds property, documents, or information; & "willfully failed to turn over files and willfully disregarded the court's order"). *Doe v. Purdue Univ.*, No. 17-3565 * 10 (7th Cir. Jun. 28, 2019) ("In the context of higher education, any property interest is a matter of contract between the student and the university."). *Cf. Connecticut v. Teal*, 457 U.S. 440, 446-7 (1982) (Facial neutrality does not defeat a disparate-impact claim, and an employer's justification may itself be shown to be pretextual.).

## CHARACTERIZATION OF MOTION

Each federal district court shall re-characterize pro se parties filings into a court-preferred pleading, petition, or motion so it administers "substan[ial]" justice, Fed. R. Civ. P. 8(e), and "not the mere form of things." *Thompson*, 103 U.S. at 484. *Cf.* Dkt. 10. In doing so, the federal district court must balance the interests of the courts in re-characterization for competently applying jurisdiction, especially for the court's bar members, with a pro se petitioner's or plaintiff's rights to choose the applicable law against their adversaries. *The Fair*, 228 U.S. at 25. *Compare* Dkts. 9 & 10 *with Bunn v. Conley*, 309 F.3d 1002 (7th

Cir. 2002) (citing *Henrikson v. Guzik*, 249 F.3d 395, 397 n. 4 (5th Cir. 2001) ("held that habeas corpus was the wrong action for this sort of challenge, but that it could be entertained as a declaratory judgment action."). A Writ of Habeas Corpus also does not mean "rehabilitation," but this great Human Rights writ may order it if necessary, including constitutionally re-construct so a restrainee will continue freer than otherwise (such as, set social security work credit hours and wage cap).

Therefore, this district court must give Petitioner equal justice under law. *Cf. In re IFC Credit Corp.*, 663 F.3d 315, 319-21 (7th Cir. 2011). *Cf. Doe v. Purdue Univ.*, No. 17-3565 * 11-2 & 15 (7th Cir. Jun. 28, 2019) (Barrett, J., op.).[4] *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599 (7th Cir. 2009) ("An education of any type is, as Judge Posner recently characterized it, not property 'in the usual sense of the word.'") (citing *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008)). *Cf.* Fed. R. Civ. P. 12(g)(2). These constitutional rights of pro se litigants also counterbalances the needless use of Fed. R. Civ. P 12(h)(3), lack of subject matter jurisdiction. *Id.* *Castro v. United States*, 540 U.S. 375, 381-3

[4] *See* "'The dogma lives loudly in you': Democratic senator on Amy Coney Barrett," *Guardian News* (2020), https://www.youtube.com/watch?v=9mDQM1TzlAM.

(2003); *Godoski v. United States*, 304 F.3d 761, 763, 2002 WL 31103020 * 2 (7th Cir. 2002) (court must evaluate independently the substance of the claim being brought to know if correct statute is being invoked.); Judiciary Act of 1789; *see e.g.*, All Writs Act, 28 U.S.C. § 1651; U.S. Const. art. VI, § 2, *In Re The Marriage of Troy D. Cohoon v. Daphne D. Cohoon*, No. 49A04-109-cv-400 (Ind. Ct. App. Jun. 27, 2002) (citing *Pettit v. Pettit*, 626 N.E.2d 444, 446 (Ind. 1993); & *Alder v. Alder*, 713 N.E.2d 348, 355 (Ind. Ct. App. 1999) ("'inherent authority to compensate the aggrieved party for losses and damages'")). *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (Plaintiffs need to prove neither "numerosity" nor that they are a person of "high interest.") & *Iqbal*, 556 U.S. at 678 ("high interest").

Upon recharacterization of any and all of the filings submitted on the docket [No. 1:26-cv-636], the case should continue on the "substance" or merits, and then, this court should award earned legal and equitable damages too because Patel has waited long enough to get substantial justice. Fed. R. Civ. P. 8(e); s*ee generally Bunn*, 309 F.3d at 1006-7 (how a claim should be construed by the court); *Id.* (citing "*Godoski*, 304 F.3d at 763, 2002 WL 31103020 * 2 (court must evaluate independently the substance of the claim being brought, to see if correct statute is being

invoked)."); & *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974) (Factfinder is encouraged, under the accompanying *Marbury v. Madison*, 5 U.S. 137 (1803), "award substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred."). *But see* **PRIV. L. NO. 107-3 & -4, 116 STAT. 3121, 3122** (2002) (Zaid had 10% compensation but Congress amended so he can have this ⅓ contingency of $2M).[5]

## BACKGROUND

At ratification of the United States Constitution, the government inherited inherent powers of judicial officers which are generally equitable. *Marbury*, 5 U.S. at 163 ("[I]t is a general and indisputable rule that where there is a legal right, there is also a legal remedy by suit or action at law whenever that right is invaded."). Patel began civil prosecution in April 2018 where the University of Notre Dame du Lac was named as an adversary, either alone or with co-defendants. *See generally Patel v. Univ. of Notre Dame du Lac et al.*, No. 1:18-cv-3442-

---

[5] *See also* For the relief of Henry C. Hush & other Foreign Serv. officers, **PRIV. L. NO. 83-417, 68 Stat. 299** (1954) (Legislature approved funding to certain individuals that the U.S. had previously put behind that person while waiting for case to be resolved; Congress provided monetary relief because it sponsored the victims to attend an area where their property was ultimately deprived as incident to "war" or like war like actions.).

WTL-DML (S.D. Ind. 2018). Patel's dispute with the University of Notre Dame concerns his departure from law school and access to certified records contendingly showing completion of degree requirements. Third Am. Compl., Dkt. 8. *Stauffer v. Wal-Mart Stores, Inc.*, ARB No. 99-107, ALJ No. 1999-STA-21 (ARB Nov. 30, 1999).[6]

In this **U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA**, Plaintiff-here Patel filed a total of four (4) federal suits under federal question jurisdiction so to mandate appearance in court:

1. *Patel v. Uni. of Notre Dame du Lac & Its Respondents Superiors*, No. 3:26-cv-636-CCB-SJF (N.D. Ind. Oct. 5, 2026).

2. *Patel v. John Doe & Jane Doe*, No. 3:23-cv-101-RLM-MGG (N.D. Ind. Feb. 9, 2023) (allowing the Notre Dame Law School or any other thing in the world take responsibility of caused legal injury to Patel) (courtesy notice sent to Respondent(s)).

3. *Patel v. Univ. of Notre Dame du Lac et al.*, 3:21-cv-628-RLM-APR (N.D. Ind. Oct. 7, 2021), Dkt. 10 (District Judge Miller waited over 40 days for Respondent to appear, "No defendant has yet served an answer or a motion for summary judgment.").

4. *Patel v. Univ. of Notre Dame du Lac et al.*, No. 3:21-cv-241-RLM-JPK (N.D. Ind. Apr. 8, 2021).

6. On a motion for summary judgment, "the judge does not weigh the evidence or determine the truth of the matters asserted, but only determines whether there is a genuine issue for trial. Court must deny summary judgement if "lightest doubt remain[s]." To prove that he was tired and credited the reasonableness of Respondents' policies "necessarily requires a weighing of evidence that is inconsistent with a summary decision proceedings..."). *Stauffer*, ARB No. 99-107, ALJ No. 1999-STA-21.

*Thompson*, 103 U.S. at 484 ("the substance and not the mere form of things"). Judiciary Act, § 32 (1789). *Nw. Fuel Co.*, 139 U.S. at 219-21. *Supra, Pearle Vision, Inc.,* 541 F.3d at 751. Both states of the United States and the State of Indiana have an "interest" in maintaining access to and use of public or private law schools. 18 U.S.C. § 245. *Cf. Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 n. 4 (1968) (citing 6 MOORE'S FED. PRACTICE 1352 (1966 ed.)) (§ 1927 and equitable powers because "delaying" was inherently "oppressive"). *Nightingale Home Healthcare Inc. v. Anodyne Therapy LLC*, 626 F.3d 958, 961 (7th Cir. 2010) (prevailing party cannot be "oppressor;" "plaintiff's conduct in the litigation unreasonably increased the cost of defending against the suit").

In the neighboring **U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA**, the district Patel lived in after "going away," *see* **Ex. H**, from the main campus of the Respondents, Patel filed a total of four (4) lawsuits under federal question and supplemental jurisdiction so to mandate appearance in court:

1. *Patel v. Univ. of Notre Dame du Lac*, No. 1:22-cv-1329-JPH-MG (S.D. Ind. 2022).
2. *Patel*, No. 1:18-cv-3442-WTL-DML.
3. *Patel v. Univ. of Notre Dame*, No. 1:20-cv-758-RLY-MJD (S.D. Ind. Apr. 14, 2020).

4. *Patel v. Univ. of Notre Dame et al.*, No. 1:21-cv-2250-RLY-MG (S.D. Ind. Sept. 21, 2021). *See also Id.*, Ord. 28 * 6, (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-5 (1998).

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (issues such as interstate or foreign commerce or criminal charge expungement is a federal policy interest that is meant to be interpreted against the United States, state, or any other government; §§ 1331 & 1367).[7] *Osborn v. Bank of the United States*, 22 U.S. 738 (1824) (if Constitution forms an "ingredient" of a complaint, then federal courts have federal-question jurisdiction.). Education triggers both 5th & 14th Amendment for Federal courts to have supervisory authority and such decision must be equitably resolved after an appreciable time for the state courts to decide. *Brown v. Bd. of Educ.*, 349 U.S. 294, 301 (1955).

Accordingly, the United States Court of Appeals for the 7th Circuit requires student-university relationship to be based in contracts[8] and

7. Circuit Justice Barrett proposed "remedial" efforts to fix ongoing wrongs in university admissions, such as withholding proofs of juris doctor degree letters to show evidence that Petitioner Patel had attended the Respondents-law school and is necessary to find employment. Hearing 100:23 (Justice Barrett), *Students for Fair Admissions*, No. 20-1199 (U.S. Oct. 31, 2022). Hearing 120:21 – 121:3 (Mr. Norris), *Id.*

8. *Am. Com. Lines, LLC v. Lubrizol Corp.*, 781 F.3d 865, 873 (7th Cir. 2015) (like in part here, quasi-contract, good faith and fair dealing; prefer giving remedy on contracts law rather than tort, and a licensed attorney should focus on contracts rather than tort claims; like a unconscious party later claiming he did not ask for life-saving measures by near-by physician; so, law assumes there is a contract as a default method of governance.)).

prefer the contracts disputes arising from these types of contract to be handled by state courts when federal question is not the basis for jurisdiction, Plaintiff Patel filed a total of about eight (8) complaints between in the **INDIANA ST. JOESPH COUNTY SUPERIOR COURT**, which is the Respondents court of a general jurisdiction, and the **INDIANA MARION COUNTY SUPERIOR COURT**:

1. *Raj K. Patel v. Univ. of Notre Dame*, No. 49D12-2207-CT-23814 (Ind. Super. Ct., Marion Cnty. 12 2024).

2. *Raj Patel v. Southbank Legal: Ladue Curran Kuehn, LLC, the Univ. of Notre Dame, & the United Parcel Serv., Inc.*, No. 49D07-2207-CT-24880 (Ind. Super. Ct., Marion Cnty. 7 Aug. 17, 2022).

3. *Raj K. Patel v. Univ. of Notre Dame du Lac*, No. 49D05-2206-CC-19517 (Ind. Super. Ct., Marion Cnty. 5 2023).

4. *State of Indiana ex rel. The Excellent The Excellent Raj K. Patel v. Marion Super. Ct., et al.*, No. 24S-OR-44 (Ind. Jun. 28, 2024), *accord*, No. 49D04-2211-MI-40962 (Ind. Super. Ct., Marion Cnty. 4 2024), *nonacq.*, *Am. Com. Lines, LLC v. Lubrizol Corp.*, 781 F.3d 865, 873 (7th Cir. 2015) & *Ross v. Creighton Univ.*, 957 F.2d 410, 416-7 (7th Cir. 1992) (discussing claims based on identifiable contractual promises).

5. *Raj K. Patel v. The Univ. of Notre Dame*, No. 71C01-2402-CT-94 (Ind. Super. Ct., St. Joesph Cnty. 1 2024).

6. *Raj K. Patel v. Univ. of Notre Dame du Lac*, No. 71D05-2311-CB-35 (Ind. Super. Ct., St. Joe. Cnty. 5 Jan. 11, 2024).

7. *Raj K. Patel v. Univ. of Notre Dame du Lac*, No. 71D07-2209-CT-356 (Ind. Super. Ct., St. Joe Cnty. 7 2022), *aff'd*, No. 22A-

CT-2787 (Ind. Ct. App. 2023), *nonacq., Am. Com. Lines, LLC*, 781 F.3d at 873, *nonacq., Creighton Univ.*, 957 F.2d at 416-7.

8. *Patel v. John Doe & Jane Doe et al.*, No. 32D01-2301-CT-1 (Ind. Super. Ct., Hendricks Cnty. 1 2023).

*Bissessur*, 581 F.3d at 601-4. *First Fed. Savings Bank of Ind. v. Key Markets Inc.*, 599 N.E.2d 600, 604 (Ind. 1990) ("It is only where the intentions of the parties cannot be readily ascertained because of ambiguity or inconsistency in the terms of the contract or in relation to extrinsic evidence that a court may have to presume the parties were acting reasonably and in good faith in entering into the contract."). **THE RESTATEMENT (2D.) OF CONTRACTS § 205**. Neither the state courts nor the litigants moved to transfer the Indiana state cases to the **INDIANA COMMERCIAL COURT**. *Ind. Com. Ct. Treatise* (disclaimer of legal weight). But, when state courts have failed to speak and resolve a matter, such as the one raised by the **U.S. COURT OF APPEALS FOR THE SEVENTH CIRCUIT** in the Order & Op. 30, *Patel v. Univ. of Notre Dame du Lac*, No. 22-2251 (7th Cir. 2023), the federal courts are to shift attention to it with its Supremacy. *Infra.* U.S. Const. art. VI, cl. 2 & amend. XIV. 42 U.S.C. §§ 1981-2. *Compare Scarlett v. Sch. of the Ozarks, Inc.*, 780 F. Supp. 2d 924, 931-3 (W.D. Mo. 2011) (denial of timely re-admissions is evidence of a viable § 1981 claim because a reasonable jury can find intentional

discrimination) *with Patel*, No. 22-2251, ECF No. 30 (The University of Notre Dame did not readmit him because of a gun charge, which is discrimination under the Indiana Expungement Issue). *See also Id.*, ECF No. 34. ***In Re The Verfied Pet. for Expungement & Sealing of Records of R.P.*, No. 32C01-1812-XP-228 (Ind. Super. Ct., Hendricks Cnty. Jan. 17, 2019).** *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609-13 (1987) ("ethnic ancestry" will constitute intentional racial discrimination; thus, may be a factor in a § 1981 viable claim). *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333-4 (2020) (Amongst multiple other causes or as sole cause, if "race" would have made a difference in the result, then race is the "but-for cause" and constitute towards Plaintiff Patel having a viable § 1981 claim.; race need not be the "sole cause.").

Interestingly, Respondent the University of Notre Dame du Lac appeared in U.S. District Court for the Southern District of Indiana, the Indiana Superior Court for St. Joesph County, and the Indiana Superior Court for Marion County and contended the non-existence of a court and denied the 7th Circuit's finding in ECF No. 30 & 34, *Univ. of Notre Dame du Lac*, No. 22-2251 and focused on non-substantive, legally immaterial

information. *Supra.* The absolute omission of appearance before this court, over the course of eight (8) years and about 16 cases[9] in Indiana, including by Respondents' named professors, is a clear red flag of misconduct based on federal contempt of court or contempt of federal law which the court may prosecute criminally. *Cf.* U.S. Const. amend. I. **Amongst federal and state courts in Indiana, ONLY THIS BENCH HAS BEEN DISRESPECTED[10] BY THE DEFENDANT-REPESONDENTS.** *Christian Legal Soc'y v. Walker*, 53 F.3d 853, 862-3 (7th Cir. 2006), *accord*, *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (1st amendment right includes choosing who to associate with and who not to associate with). *Cf. Christian Legal Soc'y Chapter of Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661 (2010) (law school

9. "But while our opinions have recognized the severity of depriving someone of the means of his livelihood,...what process is due, account must be taken of 'the length' and 'finality of the deprivation.'" *Gilbert v. Homar*, 520 U.S. 924, 932 (1997).

10. *Willy*, 503 U.S. at 139 ("The interest in having rules of procedure obeyed, by contrast, does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction."). *Id.* at 132 (citing *U.S. Catholic Conference v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72 (1988)). Also, when either party may not successfully appeal for lack of subject-matter jurisdiction in trial and appellate court. 28 U.S.C. § 1919. Plus, having The Honorable Circuit Justice Barrett voluntarily chose her own honor's judicial "investiture" at the Respondent-law school. Kevin Allen, "Amy Coney Barrett, alumna and longtime ND Law faculty member, confirmed as Supreme Court justice," Oct. 26, 2020, https://law.nd.edu/news-events/news/amy-coney-barrett-confirmed-supreme-court/. *Willy*, 503 U.S. at 139 ("But where such an immediate appeal is not authorized, there is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance," even without jurisdiction).

non-discrimination policy applied not invalidly for multi-culturalism). *303 Creative LLC v. Elenis*, 600 U.S. 570, 594 (2023) (corporation do not lose the 1st Amendment by choosing to speak via corporate form). It is clear that Respondents who have local geographical clout acted outside "constitutionally prescribed limits" by not intending to further Patel's educational goals made "jointly"[11] under advisement from letters of recommendations from the United States, **THE HONORABLE (THE EXCELLENT) THEN-SENATOR & NOW-AMBASSADOR TO THE HOLY SEE JOESPH DONNELLY**. *Students For Fair Admissions*, 600 U.S. at 217. *See also Greater Canton Ford Mercury, Inc. v. Ables*, 948 So. 2d 417, ¶¶ 24-6 (Miss. 2007) ("In general, the principle of 'comity' is that courts of one state or jurisdiction will give effect to laws and judicial decisions of another state or jurisdiction, not as a matter of obligation but out of deference and mutual respect.") (citing BLACK'S LAW DICTIONARY 183 (abridged 6th ed. 1991)). But, this court is also responsible for enforcing the constitution's Full Faith & Credit Clause. U.S. Const. art. IV, § 1 &

---

11. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (Kavanagh, J., op.) ("when the government acts ***jointly*** with the private entity") (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-2 (1982)). *An Act for the relief of Nathaniel Twining,* **PRIV. L. NO. XXIV, STATUE II** (1790) (Congress paying for the penalty of postmaster since it tasked Twining.).

28 U.S.C. §§ 1738-9. So, this court should take into account **THE HONORABLE MISSISSIPPI CIRCUIT COURT HINDS COUNTY CLERK AND CHIEF OFFICER**[12] **ZAK D. WALLACE'S** entry of default judgement against Respondent(s)-here because it is law and equitable interests for the case and shows Respondent's bad tendency in acts and omission. *Compare* **Exs. B-D**, *Patel v. Univ. of Notre Dame du Lac*, No. 25CI1:23-cv-279-WLK (Miss. Cir. Ct., Hinds Cnty. 2023) *with Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958) (Univ. of Notre Dame compromised sworn duties is "not 'due to inability,'" so enforcing default is proper because it constitutes "willfulness, bad faith, or any fault," *prima facie* and *per se*). *See also John Roberts Mfg. Co. v. Univ. of Notre Dame Du Lac*, 152 F. Supp. 269, 270 & 272-3 (N.D. Ind. 1957) (The Univ. of Notre Dame was created by a special Act of the Indiana General Assembly with its own police powers, and is highly prestige across the globe). **Ex. M-1.**

The 7th Circuit found that Respondents-the University of Notre Dame du Lac discriminated against Plaintiff-Appellant-Prevailing Party Patel for not letting him back into the law school. *Debold, v. Stimson*, 735 F.2d 1037 (7th Cir. 1984) (A "pro se litigant who has substantially

---

[12] *See* Ex. B-1.

prevailed certainly is entitled to 'litigation costs reasonably incurred.'"). *See generally Univ. of Notre Dame*, No. 22-2251, Ord. 30, *corrected*, Ord. 24 (7th Cir. Mar. 16, 2023). On effective remand to Indiana Superior Court for Marion County counselors denied everything, and being only short in denying the fact that Patel was a student there, like the 7th Circuit found. *Id.* By abusing their power and Respondents' clout and "prestige," they were able to secure dismissal of the case and even calling a breach of its own civil rights statute and expungement record as "not important" or "frivolous," and, since Indiana superior court judges are directly elected, in plain text, it means that the judges' constituency, primarily white-skinned-voters who are known for their *homonationalism*, *contra.* 42 U.S.C. §§ 1981-2, do not have a rational interest in finding in favor of Patel and effectively demoting or removing a one or more white-skinned-citizen(s) in Commerce from and in Indiana. **Ex. A.** *Cf. Arbaugh*, 546 U.S. at 506. (Plaintiffs does not need to prove "numerosity" nor their status as a person of "high interest."). This viewpoint is shared by the Commissioners of St. Joesph County as applied to the likelihood of which race or color through its enrolled students on the mandatory law school grading curve which sets the

number of letter grades. St. Joesph Cnty. Prohibition of Hate Activities Ordinance ("SJCPHAO") § 130.4. And, while the pressure by election and re-election of the superior court judges is not persuasive in many other settings, the legal industry, Law School Admission Council ("LSAC"), the Sovereign of the State of Indiana, and non-accredited law school have kept the diversity statement requirement because its evidence shows constitutionalized interests. Common Law, Ind. C. § 1-1-2-1 (2026). ICLEO Statute, Ind. C. §§ 33-24-13 *et seq.* (2026).[13] Intentionally, purposefully, knowingly, and deliberately compromising Ordered Liberty decreases prosperity and economic freedoms for the nation as a whole in legal interstate commerce.[14] *Kansas v. Hendricks*, 521 U.S. 346, 357 &

---

13. ICLEO Scholarship eligibles include individuals who have the status of citizens of the State of Indiana. Ind. C. § 33-24-13-2 (2025). *See generally In the Matter of the Appointment of the Chair of the Advisory Comm. of the Ind. Conference for Legal Educ. Opportunity*, No. 22S-MS-361 (Ind. Nov. 18, 2022) (Rush, C.J., order); *In the Matter of the Appointment of the Chair of the Advisory Comm. of the Ind. Conference for Legal Educ. Opportunity*, No. 23S-MS-82 (Ind. Mar. 30, 2023) (Rush, C.J., order); *but see In the Matter of Appointments to the Comm'n for Continuing Legal Educ.*, No. 26S-MS-188 (Ind. Sept. 30, 2026) (Rush, C.J., order), and *In the Matter of Reappointments to the Comm'n for Continuing Legal Educ.*, No. 26S-MS-188 (Ind. Jun. 16, 2026) (Rush, C.J., order).

14. *Cf. Washington v. Marion Cnty. Prosecutor*, No. 17-2933 * 6, 6 n. 4, 916 F.3s 676, 679 (7th Cir. Feb. 26, 2019) ("Obviously, vehicle forfeitures [at Ind. C. §§ 34-24-1-1(a)(1)] are economically painful. Many Americans depend on cars for food, school, work, medical treatment, church, relationships, arts, sports, recreation, and anything farther away than the ends of their driveways. Cars extend us. ***Cars manifest liberty.*** A person released on bond, retaining a presumption of innocence, might suffer virtual imprisonment if he cannot regain his vehicle in time to drive to work.") (italics and bold added), *rev'd & rem'd*, 264 F. Supp. 3d 957 (S.D. Ind. 2017). *Cf.* 28 U.S.C. § 1919.

359 (1997) (what constitutes "ordered liberty" in an actual "involuntary" action) (citing *Jackson v. Indiana*, 406 U.S. 715, 732 & 737 (1972) (using the terms "incompetency" and "insanity")).

Those unlawful interests of Respondents in "effective power" are a sad fact in itself for depriving Patel of his life, liberty, property, and the orderly pursuit of happiness. *Contrast Upjohn Co. v. United States*, 449 U.S. 383, 388-9 & 393 (1981) ("zone of silence;" "control group;" and "substantial role" at entity) *with Purcell v. United States*, 1 F.3d 932, 937 (9th Cir. 1993) (citing *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir.1992) (quoted by also *Taylor v. IRS*, No. 93-cv-608 (10th Cir. Oct. 24, 1995)). Under the University of Notre Dame bylaws, Patel is sufficiently considered an "alumnus"[15] after the successful completion of a year or two. And, most recently, upon notice of a filing of a writ of habeas corpus, despite not being formally served, Respondents breached their contractual obligations in good faith and fair dealing under the 7th Circuit education contract with Patel to address genuine concern. *Creighton*

15. *See* Art. III, § 2, Notre Dame Alumni Ass'n Const. (1925) (eligible members include, "[f]ormer matriculated students whose entering class had graduated and who received the required approval for membership."). *Former Students Can Be Elected to Alumni Membership*, THE NOTRE DAME ALUMNUS, 5 (1958) (former students who did not receive degrees become alumni-association members after their entering class graduates, subject to approval by the Directors of the Alumni Ass'n).

*Univ.*, 957 F.2d at 416 (internal citations omitted). *In re Kuehn*, 563 F.3d 289, 292 & 294 (7th Cir. 2009) ("implicit part" and "implicit term"). Thus, Respondent acted in "bad tendency"[16] by disconnecting themselves from Relator-Petitioner Patel only after Patel tendered his dues. *Patel v. Univ. of Notre Dame du Lac*, No. 1:22-cv-1329-JPH-MG (S.D. Ind. 2022). *Patel*, No. 1:18-cv-3442-WTL-DML. *Patel v. Univ. of Notre Dame*, No. 1:20-cv-758-RLY-MJD (S.D. Ind. Apr. 14, 2020). *Patel v. Univ. of Notre Dame et al.*, No. 1:21-cv-2250-RLY-MG (S.D. Ind. Sept. 21, 2021). *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ("with an evil eye and an unequal hand"). The "effective power" at Respondents have thus harassed Patel, vexatiously and unreasonably. 28 U.S.C. § 1927.

So, federal interests does not exist only in maintaining the Supreme Court's jurisdiction through this court, but also its own inherent jurisdiction (which came about an agreement between the pro-national Federalist and pro-state Anti-Federalist), contempt of federal law (federal contracts common law, anti-systematic genocide, and anti-federal hate crime, which are all real concerns college students in the

16. *See e.g., Dennis v. United States*, 341 U.S. 494 (1951) (cited in *State v. McLaughlin*, 212 N.E.2d 635, 638 (Ohio Ct. App. 1965) ("The 'bad tendency' test offers virtually no protection to freedom of expression.")).

United States learn prior to or starting in August 2010), and contempt of federal policy, included but not limited to cases interpreted by the 7th Circuit above or this court, and ensuring that it removes all restrains of commerce, *see generally* the Sherman Act, and equitably applied here for the judicial economy, fairness, and the "reputation" of the United States in the international trade of students and other human capital. *Cf. Arbaugh*, 546 U.S. at 506 n. 4 (42 U.S.C. § 2000e-6(b), authorizing suits by the Government to enjoin "pattern or practice" discrimination found in Commerce) (cleaned up). 22 C.F.R. § 101.1(c) ("Protect the national commercial reputation of the United States."). *Fourqurean v. NCAA*, No. 25-1187 * 3, 8, & 13 (7th Cir. Jul. 16, 2025). ***Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)** (issues such as interstate or foreign commerce or criminal charge expungement is a federal policy interest that is meant to be interpreted against the United States, state, or any other government; § 1331). *Id.* (relations with Respondent implicate federal interests, per 22 CFR § 62.10(e)). *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 944 (7th Cir. 2020).

With all due respect, and may it please the court, Plaintiff T.2E Patel is ashamed of Respondents' action and cannot believe that he is

cornered into coming before this court and on these terms. *Marbury*, 5 U.S. at 157 & 173-4 (federal judicial review maintains separation of powers & checks and balances; ensures officers under the U.S. Constitution are not prevented jurisdiction). A couple of days prior to submitting this document in the mail to this court, Patel-here moved for equitable taxing in restitution for fees, costs, and just damages in *Raj K. Patel v. Univ. of Notre Dame du Lac*, No. 1:22-cv-1329-JPH-MG (S.D. Ind. 2022), *rev'd & remanded*, No. 22-2251 (court making no comment on how taxing of fees, costs, and just damages thus leaving it up to Prevailing Party-Appellant Patel under Fed. R. App. P. 37-9). It is "absurd" to think that the appellate court above sanctioned or limited his right to recovery after he proved discrimination. ECF Nos. 30 & 34. *Stauffer v. Wal-Mart Stores, Inc.*, ARB No. 99-107, ALJ No. 1999-STA-21 (ARB Nov. 30, 1999).

**RULES**

This district court may impose civil sanctions under its inherited "inherent powers," with or without jurisdiction, *Ex Parte Robinson*, 86 U.S. 505, 510-1 (1873), *In the Matter of Skupniewitz*, 73 F.3d 702 (7th Cir. 1996), & 28 U.S.C. § 2105, or without Congressional statutory grant

of authority or enablement by Rule. *Illinois v. City of Milwaukee*, 406 U.S. 91, 99-100 (1972). *Cf. Debold*, 735 F.2d at 1037. Just damages and "punitive damages" are available to a Prevailing Party when "[a] wrongful act intentionally done without legal justification or excuse with an intent to inflict injury." *Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513, 525 (Ind. Ct. App. 1989). *Kho v. Pennington*, 875 N.E.2d 208, 217 (Ind. 2007) (Shepard C.J., concurring itself). And, while assuming that Respondents hired lawyers and they advised non-attorney appearing in this federal district, their attorney's behaved improperly because "good faith" does not mean skipping court to avoid penalties. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987). *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 & 520 (Ind. 1993). *Cf. Hindmon v. Nat'l-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 620-2 (7th Cir. 1982) ("default judgment under Rule 37 requires a showing of 'willfulness, bad faith, or fault' on the part of a non-complying party") (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 & 642 (1976) ("callous disregard" of duty and "flagrant bad faith") & *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)). *United States v. Smith*, 555 F.2d 249 (9th Cir. 1977) ("the Supreme Court did find that speech having a 'bad

tendency' was not protected by the First Amendment.")[17](citing *Gitlow v. New York*, 268 U.S. 652 (1925)). *See generally Abrams*, 250 U.S. at 624. *Cf. United States v. U.S. Shoe Corp.*, 523 U.S. 360, 365-6 (1998) ("True, § 1581 (i) does not use the word 'exports.'"). *The Fair*, 228 U.S. at 25. *See also Arbaugh*, 546 U.S. at 506 ("Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter", whether in law or inherent equity) (citing 42 U.S.C. § 2000e-5(f)(3)). Multiple courts may consider equitable measures, but independently, simultaneously. *Am. Com. Lines, LLC*, 781 F.3d at 873 (federal preferences are to order settlement apply). *Iqbal*, 556 U.S. at 678 (persons of "high interest"). The State of Indiana imposed a default and immutable covenant of good faith and fair dealing to education contracts. *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031 (7th

17. Essentially, every decision the Respondents make screws Patel over, **sufficient for arrest development.** *Stive v. United States*, 366 F.3d 520 (7th Cir. 2004) (citing *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1235 (7th Cir. 1985) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). *Stive*, 366 F.3d at 520 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (*see also Id.* at 46 n. 10 ("purpose to harass or to cause unnecessary delay or needless increase in the cost of litigation"); *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003) ("willful disobedience or bad faith"); *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1167 (7th Cir. 1984) ("suit or defense brought in bad faith - brought to harass rather than to win"); *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir.1983) ("subjective bad faith"); & *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1336 (11th Cir. 2002) (ditto).

Cir. 2021) (citing *Creighton Univ.*, 957 F.2d at 416) ("It is generally held in the United States that the basic legal relation between a student and a private university or college is contractual in nature.") (internal citations omitted)). *Mellowitz v. Ball St. Univ.*, 221 N.E.3d 1214, 1229 (Ind. 2023) (quoting *Bruck v. St. ex rel. Money*, 91 N.E.2d 349, 352 (Ind. 1950)).

Article III equitable jurisdiction is justifiably employed with and for the inherent powers for the maintenance of the "judicial economy, convenience, fairness, and comity." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 423-4 (1978). *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Further, under equitable jurisdiction, not only may the prevailing party tax costs, fees, and just damages but also compensatory fees sanction limited to fees and expenses that would not have been incurred but for the specific misconduct if the victim, prevailing party has requested beyond an injunctive relief. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108-11 (2017). *But see AMG Capital Mgmt., LLC v. Fed. Trade Comm'n*, 593 U.S. 193 (2021) (9-0) (not applicable here). Therefore, it is beyond a reasonable doubt that Respondent-University of Notre Dame du Lac

misconduct violated equitable duties; not only this court but also Chief Officer and Circuit Court Clerk Wallace has power, and it would not be inappropriate to use epigenetics in determining if the Respondents' effective controlling power has bias against the court officers or Plaintiff-U.S. Basis Officer Patel. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-6 & 50 (1991). Throughout the common law jurisdictions, most countries have agreed to the Convention of Biological Diversity, but the U.S. Senate has not given its 2/3 necessary vote because of the Republican Party. Convention on Biological Diversity, Jun. 5, 1992, 1760 U.N.T.S. 79, 31 I.L.M. 818. However, the national Enforcer of this district court, the President of the United States, will enforce this case equitably, and where necessary applying **HIS EXCELLENCY PRESIDENT DONALD J. TRUMP'S** faithful discretion to Take Care, by remedying T.2E Mr. Patel's interests to Take Care, under the unitary presidency theory. *Id.* U.S. Const. art. II. 5 CFR § 2635.101(b)(14); 22 CFR § 101.2; 15 CFR § 0.735-18 (Government employees shall not prioritize ethics and "are expected to be loyal to the Government, and to the department or agency in which they are employed."); & 28 C.F.R. § 24.101.

This court might also feel compelled to administer justice by upholding comity with the Chief Officer of the State of Mississippi Hinds County Circuit Court who is also the Clerk of the Circuit Court Zak Wallace, who issued an entry of default. Dkt. 8 & 10, *Patel*, No. 25CI1:23-cv-279-WLK. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 & 1075 (7th Cir. 2018) ("in the face of these principles of equity, comity, and federalism, to undertake the requested supervision[18] of state court operations" by federal district courts is permissive "once state courts have sufficiently been prove to refuse to exercise jurisdiction as a 1st Amendment matter") (citing *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 682 (7th Cir. 2010)). *Wetzel v. Glen St. Andrew Living Cmty. LLC*, No. 17-1322 (7th Cir. 2018) (Besides, both the 5th and 14th amendments apply to educational institutions, not just one of those due process amendments.) (citing *Byrd v. United States*, 584 U.S. ___ , 138 S. Ct. 1518, 1527 (2018) (citing 2 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND, ch. 1). *See also Cedar Point Nursery v. Hassid*, 594 U.S.

---

18. *E. F. Hutton & Co. v. Moffatt*, 460 F.2d 284 ¶ 4 (5th Cir. 1972) ("It is only appropriate where there has been a clear record of delay or contumacious conduct.") (citing *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 ¶ 8 (5th Cir. 1968) (power to enter default judgement "is one inherent in the courts 'in the interest of the orderly administration of justice')); & *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). *See also* 28 U.S.C. §§ 1738-9.

139, 141 S. Ct. 2063, 2072 (2021) (citing 2 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 2 (1776)). Not honoring the expungement court is bad faith use of equitable inherent jurisdiction because this court should give Comity to expungement case. *In Re The Verfied Pet. for Expungement & Sealing of Records of R.P.*, No. 32C01-1812-XP-228. This along should have conditioned Respondents to not miss another court date, especially once down the street from its headquarters, brought into existence by a special vote of the Indiana General Assembly. *John Roberts Mfg. Co.*, 152 F. Supp. at 270 & 272-3 ("having been so chartered under the corporate name of 'University of Notre Dame Du Lac' by a special Act of the Indiana Legislature in 1844 and thereby empowered, inter alia, to make and execute such rules deemed necessary for its welfare, and has developed into a large university with a campus having over one hundred buildings in St. Joseph County, Indiana and with an enrollment of approximately six thousand students and alumni in excess of twenty-five thousand.").

Furthermore, unlike the states, the United States views education as a national security interest is against depriving someone of education because it will next cause harmful societal costs. *Plyler v. Doe*, 457 U.S.

202 (1982). So, along with 42 U.S.C. §§ 1981-8, this court is under judicial cognize to ensure education is not unconstitutionally deprived, especially because it can demote a person into the underclass. ***Brown II.*** Plus, the **Indiana State Bar Association Legal Ethics Committee Opinion No. 1 of 1996** has stated that attorney's act in "flagrant bad faith" when not ensuring representation via an entry of appearance or outside of court for advice and counseling. *Id.* *Vendo Co. v. Lektro-Vend Corp.*, 434 U.S. 425 (1978) (federal court has power to issue writs to state courts); *Bucolo v. Adkins*, 424 U.S. 641 (1976); *Gen. Atomic Co. v. Felter*, 436 U.S. 493 (1978); *& Deen v. Hickman*, 358 U.S. 57 (1958).

**DISCUSSION**

"Judicial interference will depend upon the facts proved and found in each case." *Am. Steel Foundries v. Robertson*, 269 U.S. 372, 380-1 (1926). Here, the court should implement equitable relief for Plaintiff Patel because of the "fairness" and "comity" considerations. *See e.g.*, Op. & Ord. 5 at 3, *Jones v. Ind. Dep't of Corrections*, No. 3:24-cv-600-CCB-MGG (N.D. Ind. Aug. 6, 2024) (citing *Univ. of Notre Dame du Lac*, No. 22-2251, 2023 WL 2387220 * 1-2 (7th Cir. Mar. 7, 2023), *corrected*, No. 22-2251, 2023 WL 2531330 (7th Cir. Mar. 16, 2023), *reh'g denied*, No. 22-

2251, 2023 WL 2776765 (7th Cir. Apr. 4, 2023)). *See also State ex rel. Hovey v. Noble*, 26 N.E. 970 (Ind. 1891) (independent judiciary doctrine, comity and civility among the branches). Additionally, where there is a substantial cap between a pro se litigant and a large corporate opposing party, like a pro se plaintiff suing the United States-U.S.P.S., here, Relator-Petitioner Patel is just as powerless because with the shire size of billionaires Respondents it should have kept material records in its "custody." *Cf. Debold v. Stimson & U.S. Post Off., Gary, Ind.*, 735 F.2d 1037 (7th Cir. 1984) ("maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination"). The lower court thought that Debold should have been awarded attorney's fee for his time which would have been billed if he could find an attorney, but because he had no exposure to a legal education, the 7th Circuit overturned the request under "attorney's fee" and allows for the prevailing party for the collection of "litigation 'costs' reasonably incurred" to make the prevailing pro se litigant *without* legal coursework whole again. *Id.* ("The legislative history of the statute makes clear that the provision for attorney fees in

the statute was intended to further the goal of "more efficient, prompt, and full disclosure of information.") (citing *Crooker v. U.S. Dep't of Justice*, 632 F.2d 916, 921 (1st Cir. 1980)). *Crooker v. U.S. Dep't of the Treasury*, 634 F.2d 48 (2d Cir. 1980) (citing *Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977) (legal trained individual allowed to tax attorney's fees)). *Cf. CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419 (2016) (the "prevailing party" may recover attorney's fees without getting a favorable ruling on the merits.), *on rem'd*, No. 1:07-cv-95, 277 F. Supp. 3d 1000, 1017 (N.D. Iowa 2017) (awarded $3,317,289.67 in attorney fees to prevailing party without getting the conclusion on the merits as requested), *aff'd*, No. 18-1446 * 5 (8th Cir. Dec. 2019). *Osborn v. Bank of the U.S.*, 22 U.S. 738, 830 (1824) ("A corporation...can appear only by attorney, while a natural person may appear for himself."). **In addition, this court should honor its comity with the Indiana Superior Court for Hendricks County and mandatory authority from the U.S. Court of Appeals for the Seventh Circuit above plainly stating that the Respondents broke the statutory law. *Compare In Re The Verfied Pet. for Expungement & Sealing of Records of R.P.*, No. 32C01-1812-XP-228 (Ind. Super. Ct., Hendricks Cnty. Jan. 17, 2019) *with* Ind. C. § 35-**

**38-9-10(b)(4)** ***and*** **ECF Nos. 30, 34, & 38 No. 22-2251 (7th Cir. 2023).** So, Patel's cost here are to be accounted up until the Respondent-University of Notre Dame hands over the contracts clause and/or confers a juris doctor degree with distinctions dated sometime in November 2017. *Debold*, 735 F.2d at 1037.

It is unfair for a party to escape a contracts liability that is made under the impression that each party will act for the advancement of the other. *First Fed. Savings Bank of Ind.*, 599 N.E.2d at 604. This is especially true when a contract is in effect, like here, because the immutable convent of good faith and fair dealing expects contracting parties to show up to court for litigation. *R3 Composites Corp.*, 960 F.3d at 944 (Organized commercial actions must be based on something, such as contracts law.). Here, that also means the Respondents should have hired lawyers to file a special appearance if they think the court did not have personal jurisdiction over it, to safely express their voice so the Respondents' entire corporations, such as future students, current students, and alumni know why they made that decision. *SpeechNow.org v. Fed. Elections Comm'n*, 599 F.3d 686, 698 (D.C. Cir. 2010) (*en banc*). Fed. R. Civ. P. 12(b)(2). Uniquely, the University of Notre Dame du Lac's

Charter (Indiana General Assembly in 1884 created university by special enactment for its founders and "their associates and successors in office"), the management/administration and attorneys, requires this for its internal succession; this non-feasance is not appropriate. *Compare* Ind. Prof. Cond. R. 1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituent.") *with* Ind. Prof. Cond. R. 1.13(b) (when counselors sight client's behavior may disturb the organization, then it must act in the best interests of the corporation; duty to bring in board or the highest authority in making a decision). **NOTRE DAME UNIV. BYLAWS §§ III.9 (alumni affairs)** & IV (appeals handled by President or the Board). *In re IFC Credit Corp.*, 663 F.3d at 318 ("Corporations unlike human beings are not permitted to litigate pro se."). *United States v. Hagerman*, 545 F.3d 579, 581-2 (7th Cir. 2008) (president who was also one of the major owners cannot represent in court; "a lawyer licensed to practice in that court")). *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985). *Cf. N.Y. Cnty. Bd. of Ancient Ord. of Hibernians v. Dinkins*, 814 F. Supp. 358, 366-7 (S.D.N.Y. 1993) (intended message of privately organized parade). *See also* Ind. C. § 20-24-1-2.5(5) (expressly lists the

Univ. of Notre Dame governing broad to serve as charter school authorizer).

The University of Notre Dame and the Congregation of the Holy Cross are both a "prestige[ious]" and well-financially-resourced entities, and they should have sent a lawyer wherever possible. *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958) (Appellee Univ. of Notre Dame compromised sworn duties is "not 'due to inability,'" so enforcing default is proper because it constitutes "willfulness, bad faith, or any fault," *prima facie* and *per se*). Because the Respondents did not fulfill their duties under the United States Constitution, this court is proper in issuing sanctions under the law of fairness. *John Roberts Mfg. Co. v. Univ. of Notre Dame Du Lac*, 152 F. Supp. 269, 270 & 272-3 (N.D. Ind. 1957) (The University of Notre Dame was created by a special Act of the Indiana General Assembly with a boon with its own police powers, and is the highly prestige across the globe). *Cf. John Roberts Mfg. Co.*, 152 F. Supp. at 275 (labeling Appellee-here "a religious organization."). *Ind. Dep't of Pub. Welfare v. Chair Lance Serv., Inc.*, 523 N.E.2d 1373, 1377 (Ind. 1988) (a corporation "in court it must generally act only through an agent who is a licensed attorney"). *In re IFC Credit Corp.*,

663 F.3d at 318 (A corporation must appear through counsel if it litigates.).

And, this federal court should honor its comity under the privileges or immunities clause of the originally enacted Constitution. U.S. art. IV, cl. 2, § 1. Ind. T.R. 12(B)(E). *St. ex rel. Meade v. Marshall Super. Ct. II*, 644 N.E.2d 87, 88 (Ind. 1994) ("comity" is mandatory upon all Indiana Superior Courts and other courts under the Indiana Constitution). *Marbury*, 5 U.S. at 163 ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. One of the first duties of government is to afford that protection...King himself is sued in the respectful form of a petition, and he never fails to comply with the judgment..."). That means this court should sanction Respondents-here of not appearing in the State of Mississippi Hinds County Circuit Court. Dkts. 8 & 10, *Patel*, No. 25CI1:23-cv-279-WLK.[19] *Moore v. Tunica Cnty.*, 143 Miss. 821, 838 (Miss. 1926) ("Circuit clerks are constitutional officers."). *Clement v. State*, 524 N.E.2d 36, 43-4 n. 3 (Ind. Ct. App. 1988) (citing *Lee v. Miller*

---

19. Op. & Ord. 14 at 3, *Romero v. Brown*, 2014 WL 4494329, No. 2:14-cv-325-JVB-PRC (N.D. Ind. Sept. 11, 2014) (death "certificate" by another non-judicial governmental, such as Dep't of Health, agency is valid and enforced through comity).

*Cnty.*, 800 F.2d 1372, 1375 (5th Cir. 1986)). *Tech. Chemical Co. v. Ig-Lo Prods. Corp.*, 812 F.2d 222 ¶ 13 (5th Cir. 1987) (court should enforce default when a party is able to comply but does not and is a prima facia per se "disobedience" in "willfulness, bad faith, or other fault.") (citing *Societe Internationale*, 357 U.S. at 212 & *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985)). 28 U.S.C. §§ 1738-9.

Mind you, the Respondents, directly or vicariously liable, bad tendency to never allow Plaintiff Patel to return shows in the following formulation of their overt acts of independent actors:

1. **PROFESSOR ANTHONY J. BELLIA, JR. (R)** looked right at Petitioner T.2E Patel, in Spring 2016, during his Constitutional Law I lecture, and said the United States Constitution is for white-skinned-people only. **Ex. I-1.** His condescending loud action and words are involuntarily memorable and did not make it past first impression and he used his classroom to attack **THE HONORABLE PRESIDENT BARACK H. OBAMA (D)**, a professor of Constitutional Law IV. This is enough pre-text to prove retaliation in preventing access to the law school campus and bad tendency toward Patel.

    a. T.2E Patel contends that disrespecting his own students is Bellia's therapy and feels the rush of escaping a greater power of federal law enforcement.

    b. Bellia's motive or rather root of anxiety, along with his wife **PROFESSOR OF LAW PATRICIA L. BELLIA (R)**, who is

also a professor at the Respondent's law school, is that they were on the losing side of the conclusion of the very salient *Obergefell v. Hodges*, 576 U.S. 644 (2015) decision.

c. In fact, Professor A.J. Bellia's radical viewpoints even led then-Professor Amy Barrett to ignore requesting his recommendation and support in front of the **UNITED STATES SENATE JUDICIARY COMMITTEE**; this is especially noteworthy because, she had previously had co-authored law articles together and because, once again, The Hon. Circuit Judge Barrett refused a public endorsement, beyond signing a generic letter with 70 other individuals, from her fellow clerk alumni for **THE HON. 92ND ASSOCIATE JUSTICE OF THE UNITED STATES SUPREME COURT ANTONIN G. SCALIA**, Professor A.J. Bellia.

d. To add to the craziness and bad tendency toward Plaintiff Patel, A.J. Bellia had his wife and colleague grade Petitioner Patel's exam without notice or prior consent. This bad tendency puts Petitioner Patel is a state of anxiety because the transcript grade should be considered invalid and for anyone else similarly situated; and other than the Bellia's joint bad tendency towards Patel, Petitioner does not challenge the validity of any included or excluded grade in this pleading (*res judicata* shall not apply). This sounds like the beginning of the establishment of religion against Petitioner Patel – the use of their marriage to share experience of identity. *See generally The Bartholomew McGuire Pet.* (Penn. 1747) (Irish indentured servant for a contract of 6 years and 6 months must only remain an indentured servant for agreed upon aggregate time; old or new

master may not detain or hold in custody further allowed time for indentured servitude).[20]

**e.** In fact, the Indiana Superior Court for St. Joe Conty, Mental Health Division thought that Professor Bellia's comments were not worthy of attention after several years later. *In the Mental Health Proceedings*, No. 71D05-2606-MH-492 (Ind. Super. Ct., St. Joe Cnty. 5 2026).

2. **PROFESSOR JAMES O'ROURKE, PH.D.** in MBA Corporate Communications class compared Plaintiff Patel to a cab driver, exposing Professor O'Rourke contending "usual," biased-driven judgment and worldview of people from South Asia. *In the Mental Health Proceedings*, No. 46D08-2606-MH-30723 (Ind. Super. Ct., Marion Cnty. 8 2026). Beyond this defamation and battery/assault, he thinks that Petitioner Patel is in want of **THE VIRGIN MARTYR MOTHER SAINT TERESA OF CALCUTTA**[21] and any exception to his worldview of foreign commerce triggers his minority anxiety, as evidenced and proved in his lecture in the Respondents' tactical light and design of the environment. *Id.* Patel had to live through this all while a student who identified as **THE HONORABLE 45TH GOVERNOR OF ALABAMA & FIRST GENTLEMAN OF ALABAMA GEORGE C. WALLACE JR. (I)** and **THE HONORABLE 48TH GOVERNOR OF ALABAMA LURLEEN BURNS WALLACE'S** great-grandson (or great-great grandson) was in the room reminding everyone every day that he sees anyone non-white

[20] Bartholomew McGuire, (26/05/1747), *Bartholomew McGuire Petition*, May 1747, Imirce, Univ. of Galway, Asset Id. 127643, Archival Record Id. P155/128/8/29, https://imirce.universityofgalway.ie/p/ms/asset/127643.

[21] Lok Shaba Debates, *Need to Subsidize the Air-Fare for Pilgrims Assembling in Vatican City on 12Th* (Apr. 29, 2008) ("Sir, in the history of Christianity or rather in the AD, namely, for the past 2000 years, no Indian has been declared as Saint by the Catholic Church.").

as an unwelcomed student per Governor Wallace's notorious, extreme opposition to the Civil Rights Act of 1964. *Buck v. Bell*, 274 U.S. 200, 207 (1927) (Holmes, J., op. of Anglo-Saxon ancestry and Butler, J., dissenting of Irish and Roman Catholic descendent) ("socially inadequate"; "welfare and that of society"; & "defective persons [as shown by their judgements]".). This is complete attend for O'Rourke to make Patel feel free.

3. During the first week of law school in August 2015, the Respondents informed Petitioner Patel and his law school peers that they must surrender all mental health records *but only after matriculation.* Petitioner Patel did not have any mental health records, so Respondents' policy was inapplicable for this. However, the Respondents acted in "bad tendency" to "humiliate" and entered an anxious state against Petitioner Patel. *Abrams*, 250 U.S. at 624. This is a bad tendency of improper enforcement of privacy laws and clearly meant to humiliate a select few for life. Convention on Biological Diversity, Jun. 5, 1992, 1760 U.N.T.S. 79, 31 I.L.M. 818. Mental Health Bill of Rts., 42 U.S.C. § 9501.

4. When Patel asked to exit campus for a bit, the Respondent's law school and the central building communicated an absolute certainty of re-admissions. It is bad tendency for the Respondents to "prevented" further execution of the education-contract through when time was of the essence and had an agreement on how to read the education contract, as discussed with two law professors with actual authority.

5. **RECTOR JIMMY TULL**, who played football for Brown University, sporadically asked Petitioner Patel if he called his "mom" today in mornings. *State v. Gilmore*, 697 S.W.3d 603, 610 (Mo. Ct. App. 2025) ("Okay...mt [*sic*] momma...*yo* momma

and *yo* sister...'inactivated.'") (italics added). This is bad tendency by trying to compromise Petitioner Patel's relationships. This is in the environs with the constitutionally unnatural display of God bending the knee to His mother, and seeing it will trigger him to engage in matricide or patricide, the latter which is one of the highest crimes in territorial India. *Oyama v. California*, 332 U.S. 633, 636 & 666 (1948). *EEOC v. Preferred Mgmt. Corp.*, 216 F. Supp. 2d 763, 848-9 (S.D. Ind. 2002) (religious discrimination).

6. Respondents also engaged in "bad tending" speech by omitting the use of their police powers to defend Petitioner Patel in a "risk" evaluation, *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)[22], when, in Respondents joint-venture with Taft Law LLP, sexually assaulted Petitioner Patel during his dinner interview with lawsuits from around the state. SJCPHAO § 130.99 (see referring to St. Joe Cnty. § 10.99). *See* Compl., *Patel v. Taft Law LLP*, No. 49D05-2606-CT-35459 (Ind. Super. Ct., Marion Super. Ct. 5 202_). *Cullison v. Medley*, 570 N.E.2d 27, 30-1 (Ind. 1991) (An assault constitutes "a touching of the mind, if not of the body...Because it is a touching of the mind, as opposed to the body, the damages which are recoverable for an assault are damages for mental trauma and distress."). Based on Taft Law LLP's prudish

[22] *See also Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 457 (7th Cir. 1991) (""We recognize the ease with which employers may use subjective factors to 'camouflage discrimination.'"). Admissions committee should grant and confer his degree's proofs. *Namenwirth v. Bd. of Regents of Univ. of Wisc. Sys.*, 769 F.2d 1235, 1243 (7th Cir. 1985) ("Faculty votes should not be permitted to camouflage discrimination, even the unconscious discrimination of well-meaning and established scholars."). *Logan v. Kautex Textron N. Am.*, 259 F.3d 635 (7th Cir. 2001). *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531 (7th Cir. 2016). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (merely a pretext (a cover-up or camouflage) for discrimination.). *Barron v. Univ. of Notre Dame du Lac*, 93 F. Supp. 3d 906, 911, 914-5 (N.D. Ind. 2015) (camouflage discrimination). *Sizyuk v. Purdue Univ.,* No. 4:20-cv-75-TLS (N.D. Ind. Feb. 15, 2023), ECF No. 77 at 36-41. *Cf. Connecticut*, 457 U.S. at 446-7.

actions against the named parties in the Marion Superior Court seems like they were protesting and "speaking truth to power" for making them feel fat, less than. *Kansas v. Hendricks*, 521 U.S. 346, 357 & 359 (1997) (what constitutes "ordered liberty" in an actual "involuntary" action) (citing *Jackson v. Indiana*, 406 U.S. 715, 732 & 737 (1972) (using the terms "incompetency" and "insanity")). Mind you, Petitioner Patel will inherit millions from his parents, as the reverse life interest will end, and this should indicate, based on Patel's then-fashionable car, that he will most likely fail Taft Law's the risk test because he is a part of the Top 1% of Americans financially (under *Oyama*), and today, Taft Law (despite its vendetta against Petitioner-here T.2E Patel) is representing the City of Indianapolis against Petitioner Patel's life interests, liberty interests, property interest, and the orderly pursuit of happiness in the court above seated in Chicago. *Patel & PMK Corp. v. Consol. City of Indianapolis/Marion Cnty., City of Indianapolis Dep't of Bus. & Neighborhood Servs., Brands, Wunder, & Askew,* No. 1:23-cv-1495-RL-MKK (S.D. Ind. Mar. 10, 2026)*, pending*, No. 26-1654 (7th Cir. 202_) & Ord. 67, *Kartik Patel v. Ahlersmeyer & Mastin*, No. 1:24-cv-489-KMB-JRS (S.D. Ind. Mar. 23, 2026), *pending*, No. 26-1807 (7th Cir. 202_).[23] *See infra* (unlawful parochial concerns). **Ex. L.** This is imputed knowledge that has never

23. Patel alleges that the City of Indianapolis challenged his status as the Ind. C. § 1-1-2-1 Landlord of the *Oyama* property, entered his land without permission, and pressured him and other residents to go elsewhere. He attributes emotional distress and mental suffering to that alleged interference with his possession and use of the property which includes a motel on Patel's land. *Oyama*, 332 U.S. at 636 & 666 (only natural-born Americans may the government allow holding property). The City is not named as a respondent in this motion. This overwhelming stress was concurrent with the City of Indianapolis' warrantless actions machine causing parasitic damages amongst others. Indiana permits recovery for negligent infliction of emotional distress where a qualifying direct physical impact causes serious emotional trauma, or where the narrow bystander rule applies. *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 378-9 (Ind. 2022). Entry onto land and pressure to leave do not themselves allege physical impact to Patel or qualifying injury to a loved one.

been addressed; this is not a law firm representing each adversary with consent; but, this is more like a law firm furthering the religiosity of its own employment decision(s) and litigiousness. *Students for Fair Admissions v. Harvard*, 600 U.S. 181, No. 20-1199 * 17, 19 & 32 (2023) (Roberts, C.J., op.) (Harvard and its other research institutions around the country discriminated against the Asian-American, including individuals who applied it to South Asian-Americans). *Id.*, 600 U.S. at 181, No. 20-1199 * 31-2 n. 7 ("cannot dispute that the share of black and Hispanic students at Harvard—'the primary beneficiaries' of its race-based admissions policy—has remained consistent for decades...For all the talk of holistic and contextual judgments, the racial preferences at issue here in fact operate like clockwork.").[24]

7. After departing from campus, Petitioner Patel, next month, spoke to **PETER HORVATH, J.D.** who works underneath **DEAN KEVIN O'REAR. Ex. H.** Horvath explained that while he chose to "go[] away" from campus, he received some information, possibly from **THEN-VICE PRESIDENT & GENERAL COUNSEL**

24. *Students for Fair Admissions*, 600 U.S. at 181, No. 20-1199 * 35 (Roberts, C.J., op.) (The Supreme Court "firmly rejected the notion that societal discrimination constituted a compelling interest. Such an interest presents 'an amorphous concept of injury that may be ageless in its reach into the past,'...It cannot 'justify a [racial] classification that imposes disadvantages upon persons...who bear no responsibility for whatever harm the beneficiaries of the [race-based] admissions program are thought to have suffered.'"). *Runyon v. McCrary*, 427 U.S. 160, 170 (1976) (42 U.S.C. §§ 1981-3 protects the right to make and enforce private contracts free from racial discrimination "to prohibit all racial discrimination, whether or not under color of law.") (internal citations omitted). *Id.* at 171 n. 9 (citing *Norwood v. Harrison*, 413 U.S. 455, 469 (1973) ("*private bias [in the admission of students to private schools*] is not barred by the Constitution, nor does it invoke any sanction of laws, but neither can it call on the Constitution for material aid from the State."). *But see* I.C.L.E.O. Statute, Ind. C. §§ 33-24-13 *et seq.*

Circuit Justice Barrett proposed "remedial" efforts to fix ongoing wrongs in university admissions, such as withholding proofs of juris doctor degree letters to show evidence that Petitioner Patel had attended the Respondents-law school and is necessary to find employment. Hearing 100:23 (Justice Barrett), *Students for Fair Admissions*, No. 20-1199. Hearing 120:21 – 121:3 (Mr. Norris), *Id.*

**Ms. Marianne Corr, JD** university Compliance Department, as he saw when working for the **City of Atlanta Law Department in Atlanta, Georgia** and probably the same parent company that sells WestLaw. *Id.* Regardless of the legality of some not disinterested person following underage and older university students, Ms. Corr would have only allowed for this privacy risk if and only if she determined that Petitioner Patel was going to quickly come back to campus for the proofs of the vesting of his juris doctor degree, like Horvath writing under Dean O'Rear. *Compare* **Exs. H & I** *with* **Exs. G & G-1**.

8. **Associate Director Amy C. Spanopoulos, LCSW, LCAC**, a front-line social worker at the Respondent's University Counseling Center, was way too powerful–she disregarded two medical doctor's requested recommendations to let him have his proofs of the completion of his juris doctor degree requirements. *Rene v. Reed*, No. 49A02-7-CV-433, 751 N.E.2d 736 (Ind. Ct. App. Jun. 20, 2001). Only the Notre Dame Law School's bad tending is worse than Spanopoulos implementation, because it disregarded both the Supreme Court's and **His Majesty King Charles III's The Right Honorable Lord Kamlesh K. Patel**'s prevailing authorities. **Ex. K**. *Washington v. Harper*, 494 U.S. 210, 221-7 (1990) (recognizes a liberty interest in avoiding unwanted antipsychotic medication). 28 C.F.R. § 46.101. It ultimately ends up being an 4th Amendment & 14th Amendment unreasonable search and seizure which has been violated, especially if the Respondents are found to be "jointly" performing with the government or governmental actor or "entwined." *Compare Manhattan Cmty. Access Corp.*, 587 U.S. at 809 (citing *Lugar*, 457 U.S. at 941-2) *with Brentwood*

*Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001).

9. It was also bad tendency and unconstitutional for the Respondents to engage in "prior restraint" of an alumni and student and prevent them from speaking to **DIRECTOR OF THE UNIVERSITY COUNSELING CENTER DR. CHRISTINE CONWAY, PH.D., HSPP**, the Respondent's director of its UCC, or another administrator over the phone or face-to-face. 28 C.F.R. § 46.101. Disregarding Petitioner Patel's preferred, Indiana-licensed choice of medical doctors is also a bad tending and prior restraint. *Id. Barron v. Univ. of Notre Dame du Lac*, 93 F. Supp. 3d 906, 911, 914-5 (N.D. Ind. 2015) (camouflage discrimination).

10. The Notre Dame Law School knows that Patel was on track for graduation with the optional 22 credit hours. *But cf. Brookhart v. Ill. St. Bd. of Ed.*, 697 F.2d 179 (7th Cir. 1983) ("If a student fails any particular part, he is *eligible to retake* that part until he passes or becomes 21 years of age.") (italics added). The law school blindly and without substantive due process nor an opportunity to be heard before the re-admissions committee, that the law school enforced non-mandatory and non-legal terminology on mental health rather than the United States Supreme Court's. *Kansas v. Hendricks*, 521 U.S. 346, 357 & 359 (1997) (what constitutes "ordered liberty" in an actual "involuntary" action) (citing *Jackson v. Indiana*, 406 U.S. 715, 732 & 737 (1972) (using the terms "incompetency" and "insanity")). 28 C.F.R. § 42.102.

11. Respondent's Professor of Law Patirica O'Hara arbitrarily stuffed Patel's own emails to her in his permanent education file; Professor O'Hara was from Vice President of Student Life and Dean of the Law School. *See Harris v. Blake*,

798 F.2d 419 (10th Cir. 1986) (Harris "contends" placing a letter about his (non-academic) behavior" in his academic file."). Professor O'Hara introduced **THE HONORABLE THEN-CIRCUIT JUDGE, NOW-103RD ASSOCIATE JUSTICE ON THE U.S. SUP. CT., AND CIRCUIT JUSTICE FOR THE 7TH CIRCUIT AMY C. BARRET** for her honor's position before the U.S. Senate Judiciary Committee. Baska & Dean O'Rear confirmed O'Hara's contributions were in bad tendency and against Patel's best interests by intentional and disparate-impact. **Ex. J**. *Sizyuk,* No. 4:20-cv-75-TLS, ECF No. 77 at 36-41.

12. Once litigation started, Respondents only appeared in Indiana St. Joe Circuit and Superior Courts and the state and federal courts that are within Petitioner Patel's federal district. In other words, Respondents spent more money than they would have otherwise if they appeared in this court. This in itself indicates "bad tending" speech and bad faith, under common law and the education contract-at-hand, to try to use their clout to sabotage Petitioner Patel. 42 U.S.C. §§ 1981-2. In fact, Respondents, or its counselors in Their No. 1:22-cv-1329 (S.D. Ind. 2022), Mr. Judge and Mr. Harold, on their own motive, submitted lawsuits while a standing order "**PROHIBITED**" lawsuits against Petitioner Patel. *Univ. of Notre Dame du lac*, 1:22-cv-1329-JPH-MG, Ord. 10 at 1. The S.D. Ind. District Judge informed Respondents that they are not above the law and their "virtue" is not going to allow them to win a lawsuit on removal from Marion Superior Court. *Id.*, Ord. 10 at 2. Then, S.D. Ind. District Judge Hanlon stated that a notice of appeal will not in "good faith." *Id.*, Ord. 18 at 1. **Ex. E.** And, then the U.S. Court of Appeals of the Seventh Circuit euphemistically scolded Respondents for engaging in jurisdiction-threatening speech against Petitioner Patel. *Univ. of Notre Dame du Lac*, No. 22-2251, Ords. 30, 34, & 38

a. It was "bad tending" speech for the Respondents to ignore and never address **PROFESSOR OF LAW VERONICA ROOT MARTINEZ'S** statement that Petitioner Patel will be "re-admitted" to receive the proofs of the completion of his juris doctor degree. A part of the conversation was over Respondents' intranet via e-mail, which Respondents lost and forcefully deleted them despite knowing that a lawsuit was likely, based on time dance they had pre-mediated. Professor Root Martinez now teaches at Duke Law School.

b. It was "bad tendency" on the Respondents for disregarding **PROFESSOR JULIA VELASCO'S** statements because Velasco needed Petitioner Patel to aid in his publication(s), as evidenced by his scholarship articles profile, and Petitioner Patel's completed juris doctor thesis.

c. It "bad tending" speech by the Respondents for disregarding the support from **PROFESSOR OF LAW JIMMY GURULÉ** and **PROFESSOR (*EMERITUS*) OF LAW JAY TIDMARSH**, who was also Respondent's Notre Dame Law School Admission Committee Chair, to receive the proofs and necessary for complete economic-enablement of his juris doctor degree and possibly visit another law school to complete most or some of Petitioner Patel's remaining optional 22 credit hours. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272-4 (1979).

d. Petitioner Patel engaged in at least "corporate diplomacy" for the Respondents upon their request. First, in Fall 2015, **THEN-DEAN OF THE NOTRE DAME LAW SCHOOL AND NOW-PROFESSOR (*EMERITA*) OF LAW NELL JESSUP NEWTON** asked Petitioner-here Patel to help fundraise for the law school at an alumni dinner. Second, in Summer 2016, Patel learned that he existential has the contribution for Emory University's and University of Notre Dame's relationship because, vice versa from Patel, he met the student government

president who went to Notre Dame for undergrad and law school at Emory. *Cf.* Report & Recommendation, *United States v. Bertucci*, No. 8:09-cr-84 (D. Neb. Nov. 25, 2009), Dkt. 47 * 6 (some carnages of eagles are irreligious if killed "just for the heck of it"). Third, one of Patel's predecessor for Emory Student Government President also attended and graduated from Notre Dame Las School several years back.[25] ***Cf.* Ex. G.**

e. It is also "bad tendering" speech for them adding to Patel's depression by omission, and aid the "depression" itself, a condition where many people are "proselytiz[ed]." 28 C.F.R. §§ 38.4(d) & 38.5(a). *John Roberts Mfg. Co.*, 152 F. Supp. at 275 (Univ. of Notre Dame is "a religious organization."). **Ex. G-1.**

13. Respondents gave only conclusory answers and did not release contracts even though it was necessary for a fair trial in Indiana Superior Court. *See supra*, St. Joe cases listed. *See e.g., Haynes v. Indiana Univ.*, No. 1:15-cv-1717-LJM (S.D. Ind. Aug. 18, 2017), ECF No. 166 at 30, *aff'd*, 902 F.3d 724 (7th Cir. 2018).

14. But also, Respondents moved in bad tendency for attorney's fees even though the Fed. R. App. P. 39(a)(3) entitles only Petitioner Patel who was the prevailing party both in the court above *and* the State of Mississippi Circuit Court for Hinds County. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 424 (1967) (Upon preemption,

25. Patel, who knows some public relations, is baffled on why an effective power in a corporate entity try to brandish and oratorize someone like him who has always been in good standing. *Cf.* Report & Recommendation, *United States v. Bertucci*, No. 8:09-cr-84 (D. Neb. Nov. 25, 2009), Dkt. 47 * 6 (some carnages of eagles are irreligious if killed "just for the heck of it"). Respondents have acted with a depraved heart and took maximum counter-intuitive risk in even Justice Barrett was in front of the U.S. Senate Judiciary Committee after President Trump's appointment. The *Upjohn* "control group" experienced possibly some good luck, but its misconduct ignores this court, other courts, and their sovereigns' standards.

federal law begins to control with its "body of federal substantive law," also known as "federal common law.").

15. Respondents engaged in bad tendering speech as it has willfully and deliberated went up against the contract-in-law in ICLEO which protects and guarantees Petitioner Patel a juris doctor degree with the hopes that it will improve the state's sovereignty.[26] *Manhattan Cmty. Access Corp.*, 587 U.S. at 809 (citing *Lugar*, 457 U.S. at 941-2).

16. Respondents also did not let Professor of Law Mark McKenna, Petitioner's torts professor, serve as his advocate against the Respondents. He "cannot," implying the Respondent as his employer forced him to omitted against Petitioner Patel. McKenna was promoted to UCLA Law School afterwards.

17. By rationally measuring Respondent's incumbent three class years, it weighed "parochial" concerns illegal against Petitioner Patel whose Life[27] is just as important as everyone else's and plus valued more at T.2E Patel. Ind. Prof. Cond. R. Pmbl. 12. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987) ("Good faith" is not a defense to Fed. R. Civ. P. 11

---

26. Legal education is much more "'affected with a public interest' and 'clothed with a public use'" than a private medical doctor's clinic selling "milk" at his clinic because legal education aids in maintaining the public order, sovereignty, and continuing international trade[26] with desirable trading partners whose likeness, if damaged, would be a matter of crisis communication for the federal chairs. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 354 (1974); *Marland v. United States*, 53 F.2d 907, 911 & 913 (C.F.C. 1931); *Rokita v. Bd. of Comm'rs of the City of Indianapolis*, No. 23A-PL-2729 * 16 & 19 (Ind. Ct. App. May 16, 2025) ("school corporations" are "local governmental entities.") (internal citations omitted); & *Brown Univ.*, 5 F.3d at 665. *Cf. Scott v. Univ. of Chicago Med. Cntr.*, 107 F.4th 752 (7th Cir. 2024) (citing *Jackson*, 419 U.S. at 353).

27. *Olga Tellis v. Bombay Municipal Corp.*, AIR 1986 SC 180 (India 1986). (in context of being evicted; "right to life" extends beyond death sentence; nexus between "life" and deprivation of "livelihood" is "unimpeachable;" "Deprive a person of his right to livelihood and you shall have deprived him of his life;" makes "life impossible to live.").

sanctions.). *Gilbert v. Homar*, 520 U.S. 924, 932 (1997) ("But while our opinions have recognized the severity of depriving someone of the means of his livelihood,...what process is due, account must be taken of 'the length' and 'finality of the deprivation.'"). That is that re-admitting Patel will automatically demote at least one person in its grading curve, as each enrolled juris doctor degree student knew that they are assuming a possible risk factor. *United States v. Brown Univ.*, 5 F.3d 658, 655 (3d Cir. 1993) (citing *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 500 (1940)); *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, No. 11-3066 * 8 (7th Cir. 2012) (citing *Banks v. NCAA*, 977 F.2d 1081, 1087 (7th Cir. 1992)). The Respondents considerations were not profession-specific, so they are within scope of the Sherman Act which finds that the Respondent has engaged in illegal "restraint" of trade and Commerce. *Brown Univ.*, 5 F.3d at 658 (citing *Marjorie Webster Junior Coll., Inc. v. Middle St. Ass'n of Coll. & Secondary Sch., Inc.*, 432 F.2d 650, 655 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 965 (1970) and *Donnelly v. Boston Coll.*, 558 F.2d 634, 635 (1st Cir. 1977)). Also note that Respondents joint-venture with the State of Indiana in the ICLEO Statute also triggers Sherman Act jurisdiction it intends to take into consideration where the professionals will practice. 15 U.S.C. §§ 1 *et seq.*

18. All American schools know that students spend years "developing their skills" usually with aid of schooling (i.e. what undergraduate major to pick and course work) and communities. *Fourqurean v. NCAA*, No. 25-1187 * 25 (7th Cir. July 16, 2025) (successful "lucrative financial arrangements because they have spent years [of their life] developing their skills"). By disassociating from a former student, the Respondents are vicariously attacking the

educational development personnel. Given the unique nature of consent provided for the implementation of the Respondent University of Notre Dame's policy regime, Respondents should have reasonably and rationally accommodate Petitioner Patel by letting him attend another campus to complete the remainder of the 22 credit hours. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). So, the Respondents then wanted to apply again under the first-year applicant requirements which was awfully and wantonly unduly burdensome and created a disparate treatment compared to his peers, such as those who withdrew and then re-attended the university to complete his degree, with intentional discrimination. *Id.* at 772. The bad tendency speaks from itself that the 84-months timeline was not followed because Respondents prevented the contract and even restrained commerce. Exs. G-I.

Right now, it looks like an affront to this court that Circuit Justice Barrett and her honor's university of investiture, the Respondents-here, did not plan on timely appearance. *Cf. Clement*, 524 N.E.2d at 43-4 n. 3 (cited in *Lee*, 800 F.2d at 1375 ("The primary value of comity is to promote cooperation and maintain harmony.")). 22 C.F.R. § 101.1(c). *Fourqurean*, No. 25-1187 * 25 (successful "lucrative financial arrangements because they have spent years [of their life] developing their skills"). The court above, the U.S. Court of Appeals for the Seventh Circuit, also remanded and relinquished jurisdiction after finding that it violated Relator-Petitioner Patel's 5th & 14th Amendment Due Process rights and civil

liberties; thus, reasonably interpreted the U.S. Court of Appeals for the Seventh Circuit, while exercising judicial restraint, sided with Appellant-there and Petitioner-here Patel who is thus the prevailing party and owed restitution. ECF Nos. 30 & 38, *Patel*, No. 22-2251. 42 U.S.C. §§ 1981-8 & 18 U.S.C. §§ 241 *et seq.* *Cf. Fourqurean*, No. 25-1187 * 28 (citing *Ohio v. NCAA*, 706 F. Supp. 3d 583, 597 (N.D. W. Va. 2023) ("Courts have repeatedly found that [c]ollege students suffer irreparable harm when they are denied the opportunity to play sports.").) (cleaned up) (other citations omitted). *Lee*, 800 F.2d at 1375. Thus, it would be "callous disregard" and "flagrant bad faith" for Respondents not to follow "governing law," and Respondents' non-named counselors should be issued a Fed. R. Civ. P. 11 sanction. *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs.*, Inc., 9 F.3d 1263 (7th Cir. 1993). *See* Compl., *Taft Law LLP*, No. 49D05-2606-CT-35459.

Respondents basic actions proves that this controversy is about "control," particularly Respondents wish to communicate that honorable and excellent United States officers who are sworn to the U.S. Constitution cannot make them give T.2E Patel his degree. *Galdikas v. Fagan*, 342 F.3d 684 (7th Cir. 2003) (citing *Johnson v. Lincoln Christian*

*Coll.*, 501 N.E.2d 1380, 1384 (Ill. App. Ct. 1986) (holding that a student who allegedly completed all the requirements for a diploma but had not been given a diploma stated a cause of action for breach of an implied contract)).

Plaintiff Patel, if this court allows the production of proofs of the vesting of his juris doctor degree in November 2017, will safely allow Patel to become an "**ATTORNEY-IN-FACT**." https://www.law.cornell.edu/wex/attorney-in-fact. In fact, many of the elites like billionaire and **FORMER-WHITE HOUSE POLICY ADVISOR AND NOW-U.S. SPECIAL ENVOY FOR PEACE MISSIONS MR. JARED KUSHNER, J.D.**, **THE HON. (THE EX.) PRESIDENT TRUMP'S** son-in-law, attended and graduated from law school at New York University and never formally litigated in any court, including the State of Georgia Superior Court for Fulton County. *See e.g., Osborn*, 22 U.S. at 830. His youngest daughter **FIRST DAUGHTER MS. TIFFANY TRUMP, J.D.** appears to have pursued a non-law firm path after graduating from Georgetown Law School.

Then, amongst the permitted equitable just damages, this court may (and should, because of the flagrant duty to exercise subject-matter jurisdiction) award punitive damages, which is the amount of

Respondents' culpability. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Patel and this court's district judge, as factfinder, can prove clearly and convincingly "*all of the facts that are relied upon*...to support the recovery of punitive damages." Ind. C. § 34-51-3-2. Here, $5,000,001.00 in total for punitive damages is okay because Respondents are a law school. *Pearle Vision, Inc.,* 541 F.3d at 751. *Am. Steel Foundries*, 269 U.S. at 380 ("A fraudulent intent need not be shown to invoke the aid of the court.") (citing *Cape May Yacht Club v. Cape May Yacht & Country Club*, 81 N.J. Eq. 454, 458, 86 A. 972, 974 (N.J. Ch. 1913). Fed. R. Civ. P. 9.

Amongst the fees, costs, and just damages Plaintiff Patel needs to recover at least **$8,000,001.00 (eight million and one dollars)** in order to ensure that the University of Notre Dame du Lac has learned its lesson in not skipping court. *Cf. CRST Van Expedited, Inc.*, 578 U.S. at 419, *on rem'd*, No. 1:07-cv-95, 277 F. Supp. 3d at 1017 (awarded $3,317,289.67 in attorney fees to prevailing party without getting the conclusion on the merits as requested), *aff'd*, No. 18-1446 * 5.

**CONCLUSION**

Therefore, Relator-Petitioner Raj K. Patel and proved Respondents acted bad faith, bad tendency, and intentional civil rights violations, deprivation of liberty, deprivation of property, and their interests before the U.S. Court of Appeals for the Seventh Circuit in No. 22-2251 (7th Cir. 2023) demands this court issue the following taxes in favor of Relator-Petitioner Pael and against the Respondent(s) at-large:

- $4,000,001.00 restitution in attorney's fees,
- $3,000,000.00 restitution for mental pain & suffering with bodily injury and parasitic damages,
- $1,000,000.00 in punitive damages,
- $30,000,000.00 in compensatory damages for loss of consortium,
- Double or treble multiplier for wasted time on this issue,
- Declaratory Relief the court thinks proper,
- Injunction against respondents to forgo transferring the proofs of the competition of my juris doctor degree,

- Counter-technologies to Petitioner T.2E Mr. Patel's invisible "archenemy"/censor/witch that the Respondents did willful, knowing, purposeful, and deliberate business with the censors at-large and disablers, and
- Reverse and grant order pertaining to Dkt. 5 (e-filing), and
- Any other relief the court thinks proper.

Sincerely,

Raj Kartik Patel

T.2E Mr. Raj K. Patel
4330 Strathmore Lane
Zionsville, IN 46077
Boone County
rajp2010@gmail.com
+1-317-740-8001

## CERTIFICATE OF SERVICE

Service will be made upon the issuance of summons. An e-mail copy will be sent to the following address:

president@nd.edu

Dated: November 13, 2026

Thanks,

Raj K. Patel

T.E. Mr. Raj K. Patel
4330 Strathmore Lane
Zionsville, IN 46077
Boone County
rajp2010@gmail.com
+1-317-740-8001